IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 11-cv-00341-MSK-MEH

DAVID LEE BURKHART,

    Plaintiff,

v.

WARDEN RAE TIMME, in her official and personal capacity;
CASE MANAGER ARTHUR TRAINOR, in his official and personal capacity;
ASSISTANT WARDEN RON WAGER, in his official and personal capacity;
CASE MANAGER III SHELLY ORTIZ, in her official and personal capacity; and
CORRECTIONAL OFFICER I MS. SEGURA, in her official and personal capacity,

    Defendants.

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

**THIS MATTER** comes before the Court on the Defendants' Motion to Dismiss **(#27)**, to which Plaintiff David Lee Burkhart responded **(#32)**, and the Defendants replied **(#45)**. Having considered the same, the Court **FINDS** and **CONCLUDES** the following.

### I. Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983.

### II. Background

Mr. Burkhart is a prisoner incarcerated in the Fremont Correctional Facility, a state prison in Colorado. In his Complaint (**#1**)[1], he asserts a variety of civil rights claims based on

---

[1]The Court is mindful that Mr. Burkhart is proceeding *pro se* and, therefore, the Court construes his pleadings liberally and holds him to a "less stringent standard" than pleadings

alleged violations of his constitutional rights, primarily centering around his placement in "Restricted Privileges" ("RP") status pursuant to regulations issued by the Colorado Department of Corrections ("CDOC").

Construing the Plaintiff's allegations most favorably to him, the Court finds that the Complaint **(#1)** alleges the following facts.

Placement of an inmate in RP status is governed by CDOC's Administrative Regulation No. 600-05.[2] Privileges are restricted for inmates "who refuse to participate in required labor, educational, or work programs, or who refuse to undergo available counseling or combination of the foregoing." *Id*. at II. If an offender refuses to participate in or is terminated from a CDOC sanctioned work or treatment program, an incident report is issued and supervisors are notified. *Id*. at IV.A. Case managers then determine if the offender meets the criteria for placement in RP status. *Id*. The inmate has 15 days to file an administrative appeal using a specified form. *Id*. at IV.B. RP status is imposed for a minimum of 90 days. *Id*. at IV.C. A procedure is specified for

---

drafted by lawyers in accordance with *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Such liberal construction is intended merely to overlook technical formatting errors, poor writing style, and other defects in the party's use of legal terminology, citation, and theories. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court, however, cannot act as a *pro se* litigant's legal advocate, and a *pro se* plaintiff retains the burden to allege sufficient facts to state a viable claim. Furthermore, *pro se* status does not relieve a party of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court must apply the same standard to counsel licensed to practice law and to a *pro se* party. *See McNeil v. United States*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

[2]The Court may consider this regulation, attached to the Defendants' Motion to Dismiss, without converting the motion to a motion for summary judgment as the Plaintiff has referred to it in his Complaint and it is central to his claims. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997) ("if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss").

removal from RP status, including satisfactory participation in the program causing placement on RP status and case manager review. *Id*. at IV.D.

An inmate in RP status is denied television and radio in the cell and is prohibited canteen items except medical and hygiene items (and a few specific clothing items). *Id*. IV.F. The inmate is required to turn in all privilege items; if any previously permitted items are now prohibited, such items are permanently confiscated. *Id*. Inmates on RP status wear different colored uniforms and are not allowed to attend recreation with general population offenders. *Id*.

Mr. Burkhart was placed in RP status on December 2, 2010 by Defendants Trainor and Ortiz, both case managers. According to Mr. Burkhart, before this he was employed in a facility kitchen and had requested to change his job. He told Mr. Trainor, his case manager. Mr. Trainor had him fill out a job change request form but informed him that he could not be moved until a replacement was found. Upon hearing this, Mr. Burkhart asked to speak to Mr. Trainor's supervisor, which ended the meeting. Mr. Burkhart and Mr. Trainor met weekly from September 12, 2010 until November 17, 2010. Finally, Mr. Trainor stated that "the replacement of you comes down from my supervisor III."

Mr. Trainor reported Mr. Burkhart for failure to work on November 17, 2010. In addition to being placed on RP status, Mr. Burkhart was also placed in punitive segregation. On November 27, 2010, Mr. Trainor had Mr. Burkhart sign a form acknowledging that he understood that he was being placed on RP status and the consequences of violating the restrictions. Mr. Burkhart states that he wrote on the form that he had not "refused" to work but rather had "failed" to work.

On December 1, 2010, Mr. Burkhart appeared in front of a job board but was not permitted to give his side of the story. Thereafter, it appears that Mr. Burkhart filed a written

protest to Ms. Ortiz, the supervising case manager. Mr. Burkhart tried to explain that he had had an issue at the kitchen and had told Mr. Trainor about it. Ms. Ortiz refused to modify the RP decision and informed him that he was not entitled to a hearing. Mr. Burkhart filed an appeal on December 10, 2010, primarily complaining that he was not given a hearing or a copy of his acknowledgment form; the appeal was denied by Defendant Wager, the Assistant Warden of the facility.

Mr. Burkhart alleges that at Fremont, inmates in RP status are kept in lock-down 22 hours a day and are segregated from general population offenders. In addition, no visits are permitted for the first 30 days, and thereafter only by appointment. Mr. Burkhart also alleges that cells of RP status inmates are searched every day.

Mr. Burkhart claims that Defendant Segura, a correctional officer, uses language that can be construed as "fighting words" in order to "entice offenders to create a disturbance." He alleges that on January 10, 2011, Ms. Segura used such language to provoke a response; after Mr. Burkhart responded, Ms. Segura "assaulted" Mr. Burkhart and placed him in wrist restraints. He contends that the restraints were applied too tightly and caused him injury; thereafter, Ms. Segura refused Mr. Burkhart's request for medical attention.

Based on the above facts, it appears that Mr. Burkhart asserts the following claims for relief: (1) violation of the Eighth Amendment, apparently based on the contention that RP status amounts to cruel and unusual punishment; (2) violation of due process under the Fourteenth Amendment, on the grounds that offenders are placed in RP status without a hearing; (3) violation of the Double Jeopardy clause by imposing two punishments on Mr. Burkhart for the same offense of failing to work (punitive segregation and placement in RP status); (4) violation of the Fourth Amendment based on Ms. Segura's searches of Mr. Burkhart's cell, including a

search whereby she seized, copied and distributed Mr. Burkhart's legal work to other offenders in the general population, and by improperly seizing Mr. Burkhart and placing him in wrist restraints so tightly that they caused injury; and (5) a negligence claim with respect to Ms. Segura's refusal to permit him medical attention for the injuries received from the wrist restraints. The Defendants are all named in their official and individual capacities.

The Defendants move to dismiss the claims based on Eleventh Amendment immunity, failure to state a claim, and failure to exhaust administrative remedies.

### III. Analysis

**A. Immunity**

First, the Defendants argue that any claims for monetary damages asserted against them in their official capacities are barred by the Eleventh Amendment. The Defendants are all employees of CDOC, which is considered an arm of the State of Colorado and therefore immune from suit under the Eleventh Amendment. *Griess v. State of Colo.*, 841 F.2d 1042, 1044 (10th Cir. 1988) (concluding that Eleventh Amendment immunity was not waived for State of Colorado or CDOC). A claim against a state official in his or her official capacity is construed as a claim against the state itself and generally barred by the Eleventh Amendment. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

However, immunity does not apply to the extent that a plaintiff seeks prospective declaratory or injunctive relief pursuant to *Ex Parte Young*, 209 U.S. 123 (1908). *See Hill v. Kemp*, 478 F.3d 1236, 1255-56 (10th Cir. 2007) (under *Ex Parte Young*, "the Eleventh Amendment generally will not operate to bar suits so long as they (i) seek only declaratory and injunctive relief rather than monetary damages for alleged violations of federal law, and (ii) are aimed against state officers acting in their official capacities, rather than against the State

itself."); *Roe No. 2 v. Ogden*, 253 F.3d 1225, 1233 (10th Cir. 2001). Nonetheless, there must be some connection between the defendant's enforcement power and the law at issue. *Ex Parte Young*, 209 U.S. at 157; *Weston v. Cassata*, 37 P.3d 469, 474 (Colo. App. 2001) ("[I]n actions for declaratory or injunctive relief . . . [state] government entities and their officers are properly considered 'persons' under § 1983 so long as they are responsible for the implementation and enforcement of a state statute.").

Mr. Burkhart seeks monetary damages against all of the Defendants. Under the authority discussed above, such claims are barred to the extent they are asserted against the Defendants in their official capacities. Mr Burkhart also appears to request injunctive relief in the form of an order releasing all offenders from RP status and requiring the Defendants to implement a hearing procedure before inmates can be placed in RP status.[3] Mr. Burkhart alleges that Defendant Timme, the Warden of the Fremont Correctional Facility, implemented the RP regulation. Therefore, construing the allegations in the light most favorable to Mr. Burkhart, he may be stating a claim against Ms. Timme in her official capacity under *Ex Parte Young* for injunctive relief. This claim for injunctive relief asserted against Ms. Timme, therefore, is not dismissed.

**B.      Failure to State a Claim**

    **1.      Applicable Law**

Defendants move for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. There is a strong presumption against dismissal for failure to state a claim under Rule 12(b)(6). *See Cottrell, Ltd. v. Biotrol Int'l, Inc.,* 191 F.3d 1248, 1251 (10th Cir. 1999). However, a claim must be dismissed if the complaint does not

---

[3] He also seeks some form of protective order to prevent harassment, but this remedy, if it were granted, would presumably be directed at individuals.

contain enough facts to make the claim "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face if the complaint contains sufficient facts for a court to draw an inference that the defendant is liable for the alleged misconduct. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *id.* at 556). Although a plaintiff is not required to include detailed factual allegations in a complaint, the complaint must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" and must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In reviewing a complaint under Rule 12(b)(6), a court should accept, as true, all well-pleaded facts and construe all reasonable allegations in the light most favorable to a plaintiff. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

### 1. Eighth Amendment

Defendants argue that Mr. Burkhart's allegations, even if true, do not demonstrate a violation of the Eighth Amendment; in other words, denying of privileges does not amount to cruel and unusual punishment.

The Eighth Amendment prohibits punishments which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain," or are grossly disproportionate to the severity of the crime; this includes punishments that are "totally without penological justification." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (citations omitted). In addition, prison officials are required by the Eighth Amendment to provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

Mr. Burkhart alleges that the RP regulation results in "excessive" punishment; however, his allegations are entirely conclusory. Thus, they are insufficient to state a claim. Mr. Burkhart

does not allege that the RP regulation is lacking any penological purpose. Indeed, on its face the regulation shows that it is intended to address failure to participate in work or treatment programs. In addition, there are no allegations that show any deprivation of a basic human need, such as food,[4] clothing, shelter, sanitation, medical care, or safety. Mr. Burkhart has not suggested that there are any facts that he would like to plead. Therefore, this claim is dismissed without prejudice.

### 2. Due Process

Mr. Burkhart's Due Process claim appears to be premised on the imposition of RP status without a hearing. The Defendants argue that Mr. Burkhart has failed to allege a sufficient claim because he has no liberty interest or property interest protected by the Due Process clause. The Supreme Court has held that a prisoner is entitled to due process before he is subjected to conditions that "impose[ ] atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Giving Mr. Burkhart the benefit of all favorable inferences, he may be able to demonstrate that the restriction of his privileges imposes atypical and significant hardship in relation to the ordinary incidents of prison life. Accordingly, dismissal of this claim is not appropriate at this time.

### 3. Double Jeopardy

The Defendants move for dismissal of Mr. Burkhart's Double Jeopardy claim on the grounds that prison disciplinary sanctions do not implicate the double jeopardy clause of the Fifth Amendment. *Wirshing v. Colorado*, 360 F.3d 1191, 1205 (10th Cir. 2004) (prison

---

[4] Although Mr. Burkhart states that supplementary food items from the canteen are necessary to fend off "malnutrition" from the facility's kitchen services, and such items were not available to inmates in RP status, this would be an issue relating to the general provision of food, not to the validity of the RP regulation.

disciplinary sanctions do not implicate double jeopardy protections). Mr. Burkhart has cited no legal authority demonstrating that Double Jeopardy protections apply to a prison disciplinary sanction such as the restriction of privileges. Accordingly, this claim is dismissed with prejudice.

### 4. Fourth Amendment

The Defendants contend that Mr. Burkhart does not state a claim under the Fourth Amendment because prison searches do not violate an inmate's Fourth Amendment rights. The Supreme Court has held that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). To the extent that Mr. Burkhart's claim is based on searches of his cell, he does not state a claim.

However, Mr. Burkhart also asserts a claim against Ms. Segura for allegedly assaulting him and using wrist restraints in a manner that caused him injury. If Mr. Burkhart can demonstrate that Ms. Segura acted maliciously and sadistically for the very purpose of causing harm rather than in a good-faith effort to maintain or restore discipline such facts plausibly state a claim for excessive force in violation of the Eighth Amendment[5]. *Mitchell v. Maynard*, 80 F.3d 1433, 1440 (10th Cir. 1996) (citing *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992)); *see also Stanton v. Furlong*, 73 Fed.Appx. 332 (10th Cir. 2003) (citing *Mitchell* as the applicable standard for inmate's claim that officer used excessive force in placement of handcuffs).

---

[5]In general, excessive force claims are examined under the Fourth Amendment as an unreasonable seizure. *Graham v. Connor*, 490 U.S. 386 (1989). However, in the prison setting, excessive force claims fall under the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 327, (refusing to consider a Fourteenth Amendment due process claim by a prison inmate for excessive force because the Eighth Amendment "serves as the primary source of substantive protection to convicted prisoners" in such cases).

Therefore, while not cognizable as a Fourth Amendment claim, Mr. Burkhart's claim based on Ms. Segura's conduct on January 10, 2011 is not be dismissed as it states a colorable Eighth Amendment claim.[6]

## C. Failure to Exhaust Administrative Remedies

The Defendants also argue that Mr. Burkhart's claim against Ms. Segura fails because he did not allege that he had exhausted his claims within the CDOC's grievance procedures. Failure to exhaust is an affirmative defense, not a pleading requirement. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Therefore, Mr. Burkhart's failure to plead exhaustion does not require dismissal of the claim.

**IT IS THEREFORE ORDERED**

(1) The Motion to Dismiss (**#27**) is **GRANTED IN PART AND DENIED IN PART**, as follows:

(a) all claims for monetary damages asserted against the Defendants in their official capacities are dismissed with prejudice as legally barred;

(b) all claims for injunctive relief against Defendants Trainor, Wager, Ortiz, and Segura in their official capacities are dismissed with prejudice as legally barred;

(c) all claims for injunctive relief against Defendant Timme in her official capacity remain pending;

(d) the Eighth Amendment claim based on Mr. Burkhart's placement in RP status is dismissed without prejudice to amendment upon a proper showing;

(e) the Due Process claim remains pending;

---

[6]To the extent Mr. Burkhart also asserts a state law negligence claim based on the same conduct, it also remains pending.

      (f) the Double Jeopardy claim is dismissed with prejudice as legally barred;

      (g) the Fourth Amendment claim based on searches of Mr. Burkhart's cell is dismissed with prejudice as legally barred;

      (h) the claim against Defendant Segura for excessive force is cognizable as an Eighth Amendment claim and remains pending.

Dated this 7th day of December, 2011

          **BY THE COURT:**

          */s/ Marcia S. Krieger*
          _____

          Marcia S. Krieger
          United States District Judge