**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Honorable Marcia S. Krieger**

**Civil Action No. 11-cv-00341-MSK-MEH**

**DAVID LEE BURKHART,**

      **Plaintiff,**

**v.**

**WARDEN RAE TIMME, in her official and personal capacity;**
**CASE MANAGER ARTHUR TRAINOR, in his official and personal capacity;**
**ASSISTANT WARDEN RON WAGER, in his official and personal capacity;**
**CASE MANAGER III SHELLY ORTIZ, in her official and personal capacity; and**
**CORRECTIONAL OFFICER I MS. SEGURA, in her official and personal capacity,**

      **Defendants.**

---

**OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

---

**THIS MATTER** comes before the Court pursuant to the Defendants' Motion for Summary Judgment **(# 95)**, Mr. Burkhart's response **(# 100)**, and the Defendants' reply **(# 97)**[1]; and Mr. Burkhart's Motion to Supplement **(# 109)** his summary judgment reply, the Defendants' response **(# 110)**, and Mr. Burkhart's reply **(# 111)**.

## **FACTS**

The Court will merely summarize the pertinent facts here, and elaborate in more detail as necessary in its analysis. In both contexts, the Court construes the evidence most favorably to the non-movant, Mr. Burkhart.

---

[1] Mr. Burkhart also filed a sur-reply **(# 100)** to the Defendants' reply, without seeking or obtaining leave of the Court to do so. Although sur-replies are not permitted without leave of the Court, in deference to Mr. Burkhart's *pro se* status and the fact that the Court finds his arguments unavailing in any event, the Court has both considered the contents of his sur-reply and grants his Motion to Supplement **(# 109)**.

1

Mr. Burkhart is an inmate in the custody of the Colorado Department of Corrections ("CDOC"). As narrowed by this Court's December 7, 2011 Order **(# 63)**, he asserts two claims pursuant to 42 U.S.C. § 1983 in this action: (i) that his assigned to "restricted privileges" ("RP") status, ostensibly for failure to perform his prison work assignment, violated his rights to Procedural Due Process under the Fourth Amendment to the United States Constitution; and (ii) that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment on January 10, 2011, when Defendant Segura placed him in wrist restraints that were applied too tightly, causing him pain and injury, and that Defendant Segura thereafter refused to permit Mr. Burkhart to receive medical attention for that injury.

The Defendants move for summary judgment **(# 95)** on all of Mr. Burkhart's remaining claims, arguing: (i) as to his claim against Defendant Segura, that he failed to exhaust CDOC's administrative remedy scheme by filing appropriate grievances prior to initiating the instant lawsuit in violation of 42 U.S.C. § 1997e(a); and (ii) that he lacks a constitutionally-protectible liberty interest in avoiding RP status, as the conditions of confinement under RP stats do not present an "atypical and significant hardship" as compared to the routine aspects of prison life.

## ANALYSIS

### A. Standard of review

#### 1. Summary judgment standard

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs

what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie*

claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

        2. *Pro se* pleadings

In considering Mr. Burkhart's filings, the Court is mindful of his *pro se* status, and accordingly, reads his pleadings liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972). However, such liberal construction is intended merely to overlook technical formatting errors and other defects in his use of legal terminology and proper English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). *Pro se* status does not relieve Mr. Burkhart of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court will treat him according to the same standard as counsel licensed to practice law before the bar of this Court. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

    **B. Exhaustion**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), requires that a prisoner exhaust all available administrative remedies prior to filing an action regarding prison conditions in federal court. To exhaust administrative remedies in the prison system, an inmate must properly follow all of the steps enumerated in the prison systems grievance procedure, regardless of whether he or she views the administrative procedure as futile. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). A prisoner who begins the grievance process, but does not complete it has not exhausted his administrative remedies and is barred from bringing suit. *See Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir.2002). The exhaustion requirement is in the nature of an

affirmative defense belonging to the Defendants, and thus, Defendant Segura bears the burden of showing that Mr. Burkhart failed to exhaust his available remedies. *Jones v. Bock*, 549 U.S. 199 (2007).

Defendant Segura has proffered the affidavit of Anthony DeCesaro, a CDOC Step 3 Grievance Officer. Mr. DeCesaro states that CDOC's Administrative Regulation 850-04 sets forth a three-step grievance procedure that applies to "any issue or complaint concerning [an inmate's] incarceration." Mr. DeCesaro states that CDOC considers the grievance exhausted only after the inmate completes the third step of that procedure. *Citing* Administrative Regulation 850-05(IV)(C)(1)(c)(4).[2] Mr. DeCesaro states that he has access to "all grievances filed and exhausted by [CDOC] inmates," and that his review of such records indicates that Mr. Burkhart "has never filed a grievance about a January 10, 2011 incident involving Officer Segura, or about any injuries resulting from any January 2011 incident." Mr. DeCesaro's affidavit is sufficient to carry Defendant Segura's *prima facie* obligation to demonstrate that Mr. Burkhart both had the obligation to exhaust an administrative remedy available through CDOC and that he failed to do so.

The Court then turns to Mr. Burkhart's response. With regard to the question of exhaustion of his Eighth Amendment claim against Defendant Segura, Mr. Burkhart's initial response states simply that he "filed a grievance on the incident with [Defendant] Segura."[3] He

---

[2] Mr. DeCesaro does not attach a copy of the regulation itself, but the Court takes judicial notice of the fact that CDOC's Administrative Regulations are public records and a full copy of the regulations discussed in this Order are available online at www.doc.state.co.us/administrative-regulations.

[3] Ordinarily, a party's simple assertion of fact in a brief is insufficient to present an issue of fact for summary judgment, as factual contentions must be established by "depositions, documents, . . . affidavits," etc. Fed. R. Civ. P. 56(c)(1)(A). However, in light of Mr. Burkhart's *pro se* status, the Court assumes that, if called upon to render the factual averments in his brief in the form of a sworn affidavit, he would do so. Accordingly, the Court will treat those assertions as an affidavit, affirmed under penalty of perjury under 28 U.S.C. § 1746.

neither elaborates nor attaches a copy of that grievance. In his sur-reply, he attaches a page from his deposition in which he insists that he timely filed a grievance concerning Defendant Segura with his Case Manager, and that the grievance was denied as "moot" – "because the Shift Commander . . . was there and because I was uncuffed after the incident happened, it's moot." Mr. Burhart stated at his deposition that he had a copy of the grievance at one point in time, and was unsure as to whether it is "in my files or it got lost during the times of moves." Notably, although Mr. Burkhart insists that he filed a grievance and that it was denied as "moot," he does not state, either in his briefing or in the supplied portion of the deposition excerpt that he proceeded through steps 2 and 3 of the procedure after having his initial grievance denied.

The Court assumes, without necessarily finding, that Mr. Burkhart's simple assertion that he timely filed a grievance against Defendant Segura – a grievance that CDOC allegedly received and denied -- is sufficient to create a genuine dispute of fact when compared against Mr. DeCesaro's affidavit that CDOC has no record of such a grievance. However, Administrative Regulation 850-04 entails a three-step process, with the step 1 grievance directed to (and answered by) "the involved DOC employee," the step 2 grievance directed to "the administrative head," and the step 3 grievance directed to "the grievance officer." The Court finds nothing in the record that creates a genuine dispute as to whether Mr. Burkhart completed steps 2 and 3 of the grievance process. Mr. Burkhart's response to the summary judgment motion states that he "filed a grievance on the incident with [Defendant] Segura," using only the singular "grievance." Similarly, the excerpt from Mr. Burkhart's deposition, attached to his sur-reply, references only his filing "**a** grievance"; he never makes any reference to filing an appeal of that grievance (to the extent steps 2 and 3 of the process are considered "appeals") or

additional iterations of that grievance (to the extent steps 2 and 3 are considered additional "grievances"). His supplemental response also refers to "his grievance on the issue" in singular terms. Nothing in the record is susceptible to an interpretation that, after filing his initial grievance, Mr. Burkhart proceeded to exhaust that grievance through steps 2 and 3 of the grievance procedure.

Accordingly, the Court finds that Defendant Segura has made a *prima facie* showing that Mr. Burkhart failed to **fully** exhaust the CDOC grievance procedure, and Mr. Burkhart has failed to demonstrate the existence of a genuine dispute of fact on that point. Thus, Defendant Segura is entitled to summary judgment in her favor on Mr. Burkhart's Eighth Amendment claim.

**C. Due Process claim**

Mr. Burkhart's remaining claim is that his placement on RP status deprived him of a liberty interest without affording him procedural Due Process. An essential component of any Due Process claim is that the person asserting that claim was deprived of a liberty or property interest that is protected by the Constitution. *Board of Regents v. Roth*, 408 U.S. 564, 569-70 (1972). The Defendants move for summary judgment on this claim, arguing that Mr. Burkhart cannot demonstrate that his placement on RP status gives rise to a protected liberty or property interest.

1. Property interest

Mr. Burkhart discusses the legal concept of property interests to some degree in his briefing, but he makes only a single perfunctory factual reference to being deprived of a property interest. In his sur-reply, he states only that "Plaintiff had his property taken from him (see Document #1 at 4)." The citation leads to a page in Mr. Burkhart's Complaint that makes no

7

particular reference to Mr. Burkhart being deprived of any particular property. At best, it states only that, as a result of being placed on RP status, "I have had my legal work read, copied, and distributed to other offenders."[4] This is insufficient to demonstrate the deprivation of any protectible property interest.

    2. Liberty interest

Turning to the question of whether placement of Mr. Burkhart on RP status deprived him of a protectible liberty interest, the Court notes that an inmate is deemed to have been deprived of a liberty interest only where the conditions the inmate is subjected to pose an "atypical and significant hardship" when contrasted with the typical incidents of prison life. *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005), *citing Sandin v. Connor*, 515 U.S. 472, 484 (1995). Alternatively, a state may create a liberty interest in certain procedures where it restrains official discretion in decision-making and mandates a particular process or outcome if certain specified criteria are met. *Elwell v. Byers*, 699 F.3d 1208, 1214 (10th Cir. 2012). Giving Mr. Burkhart's briefs the most generous reading, he offers arguments on both theories.

    a. liberty interest arising from conditions of confinement

Mr. Burkhart does not specifically describe the conditions he experiences while on RP status, but he points to CDOC's Administrative Regulation 150-01,[5] which describes some aspects of that status. Among other things, placement on RP status may result in the inmate losing access to "canteen, movies, television, radio, gymnasium, yard, library, hobby shop, or

---

4 Later in his Complaint, Mr. Burkhart states that, upon placement on RP status, "all of offenders' property is seized, searched, and filtered through a list of 'allowable items.' Any item that is not on the 'allowable items' list will be seized and if it is a 'grandfathered item, it will be destroyed." The Court understands this to be a statement of policy, not a statement by Mr. Burkhart that any specific property of his was destroyed.

5 As discussed below, the Court finds this regulation to be inapposite to Mr. Burkhart's challenge to his placement on RP status, although the types of privileges discussed therein that may be restricted as a disciplinary sanction are similar to those that may be restricted pursuant to RP status.

social visitation, including contact visitation," but does not include loss of access to "work or academic or mental health programs." The Court also takes judicial notice of the fact that RP status is specifically discussed in Administrative Regulation 600-05, which provides that inmates on RP status may be deprived of access to non-educational television or radio use, canteen access, and enjoyment of "privilege items"; will be double-bunked with other inmates on RP status; will be issued green pants (instead of the orange pants that non-restricted inmates wear); and will not participate in recreation at the same time as non-restricted offenders.

This Court finds that, even if Mr. Burkhart was subjected to <u>all</u> of the possible restrictions of RP status, he has failed to demonstrate that such restrictions present an "atypical and significant hardship" as compared to the ordinary incidents of prison life. This Court is aware of no authority – and Mr. Burkhart cites none – for the proposition that denying inmates access to canteen services, televisions, and other "privileges" gives rise to a protectible liberty interest under the Constitution; indeed, the 10th Circuit has held that the extremely-restrictive conditions at the Federal Bureau of Prisons' Administrative Maximum ("ADX") facility – including constant solitary confinement including only educational television access, limited recreational opportunities, infrequent social visits, etc. – were not so atypical from the ordinary incidents of confinement as to give rise to any liberty interest in avoiding them. *Rezaq v. Nalley*, 677 F.3d 1001, 1015 (10th Cir. 2012). The privileges lost by Mr. Burkhart as a result of RP status result in conditions far less oppressive than those in *Rezaq*. Thus, the Court finds that Mr. Burkhart has not carried his burden of demonstrating facts that would suggest that assignment to RP status amounts to an atypical and significant hardship such that a constitutionally-protected liberty interest exists in avoiding such assignment.

b. <u>liberty interest arising from state-created procedures</u>

As noted above, a state may create a liberty interest in particular procedural requirements by removing discretion from prison officials and requiring them to perform certain acts when specified conditions are present. Mr. Burkhart appears to contend that the Defendants violated CDOC-created procedural requirements by: (i) not applying the "preponderance of evidence" standard required in his Code of Penal Discipline Hearing; (ii) by imposing both punitive segregation **and** RP status sanctions against him for the same offense, in violation of CDOC regulations; and (iii) failing to set forth the specific privileges being imposed against him as a disciplinary sanction, again in violation of CDOC regulations.

Mr. Burkhart's argument appears to arise from a conflation of two separate regulations. CDOC regulations contemplate two separate means by which an inmate who refuses to perform a work assignment can be punished. Administrative Regulation 600-05 provides for placement on RP status of "offenders who refuse to participate in required labor, educational, or work programs." That regulation offers a relatively limited process by which RP status is imposed: if the inmate's work supervisor notifies prison officials that the inmate has refused a work assignment, the inmate's Case Manager must "determine whether the inmate meets the criteria for placement on RP status," and, if so, complete a particular form and "forward [it] to [another official] for a facility classification review." The regulation does not specifically describe how such a review is conducted, nor specify any particular criteria that the Case Manager or other officials must examine in determining whether to impose RP status.

Separately, an inmate who refuses a work assignment can be charged with a violation of the Code of Penal Discipline. Such disciplinary charges are governed by Administrative

Regulation 150-01, which provides for certain Due Process protections, including advance notice of the charges, the right to a hearing to contest those charges, and the right to have the charges adjudicated based on the preponderance of the evidence. A variety of sanctions are possible when an inmate is convicted of a disciplinary violation, including assignment to punitive segregation and loss of privileges. It should be noted, however, that loss of privileges imposed as a disciplinary sanction and placement on RP status, although perhaps similar in effect, are not identical for purposes of determining what procedural protections (if any) must be followed before imposition.

Here, the record reflects that prison officials invoked **both** regulations against Mr. Burkhart, albeit serially. Mr. Burkhart was first charged with a disciplinary violation for refusing to perform a work assignment as directed by his supervisor. That charge, brought pursuant to Administrative Regulation 150-01, proceeded to a disciplinary hearing on November 17, 2010. After hearing from various witnesses, including Mr. Burkhart, the Hearing Officer found Mr. Burkhart guilty of the charge and imposed a sanction in the form of "10 days punitive segregation from 11/17/10 to 11/27/10."[6] Thereafter, on November 19, 2010, Mr. Burkhart's

---

6 Notably, consistent with the instruction in Administrative Regulation 150-01(IV)(E)(p)(5) that "punitive segregation and loss of privileges should not be used together as a single sanction," the Hearing Officer did not simultaneously impose a sanction of loss of privileges as a direct punishment for the disciplinary conviction. Although, as discussed below, the Court does not construe Mr. Burkhart's Due Process claim to attack the sufficiency of the process he received with regard to his conviction of a disciplinary violation (*c.f.* his placement on RP status), were the Court to do so, it would reject Mr. Burkhart's latter two arguments – that the Hearing Officer erred in imposing both segregation and loss of privileges as a disciplinary sanction, and that the Hearing Officer's determination did not identify the specific privileges being suspended – on that ground.

      Admittedly, Mr. Burkhart later lost privileges as well, but not as part of the sanction handed down under Regulation 150-01; rather, the loss of privileges resulted from application of an entirely different regulation, Administrative Regulation 600-05. One might legitimately criticize the apparent inconsistency between the two regulations in circumstances such as this, but the Court cannot say that this inconsistency is sufficient to give rise to Due Process protection. In any event, the Court notes that the cited provision of Administrative Regulation 150-01 is merely advisory – inmates "should not" be given both segregation and loss of privileges as a single sanction –, not stated in mandatory terms – *i.e.* inmates "may not" be given both sanctions simultaneously. No Due Process protection can arise where the state official is vested with discretion as to how to apply a merely advisory regulation.

Case Manager invoked the separate mechanism of Administrative Regulation 600-05 by filing a "request for Restricted Privileges" form, noting that Mr. Burkhart had been "convicted of refusal to work on 11-17-10." Consistent with the minimal procedural requirements in Regulation 600-05, that request was submitted to Classification section, and on November 23, 2010, a "Classification Chairperson" approved the assignment of Mr. Burkhart to RP status.

This Court finds nothing in Administrative Regulation 600-05 that constrains a CDOC officials' discretion to act when RP status is sought for an inmate, and thus, that regulation creates no liberty or property interest that would give rise to a Due Process claim. For example, nothing in that regulation dictates that an inmate is entitled to a hearing when his Case Manager requests placement on RP status. Mr. Burkhart's complaint that he received a defective hearing on his <u>disciplinary</u> conviction is thus irrelevant, as the claim presented here alleges a deprivation of Due Process only with regard to his placement on RP status.[7]

Accordingly, the Court finds that Mr. Burkhart has failed to demonstrate the existence of a genuine issue of fact with regard to his Due Process claim, and the Defendants are entitled to summary judgment on that claim.

## **CONCLUSION**

For the foregoing reasons, the Defendants' Motion for Summary Judgment **(# 95)** is **GRANTED**. The Clerk of the Court shall enter judgment in favor of all Defendants and against

---

[7] To the extent Mr. Burkhart would now attempt to refashion his Due Process claim to attack his disciplinary conviction instead, the Court merely observes that the Hearing Officer heard testimony from several witnesses and apparently found those testifying against Mr. Burkhart to be more credible than Mr. Burkhart himself. This is entirely consistent with application of the "preponderance of the evidence" standard. This, coupled with the observations in the preceding note, dispose of all of the alleged violations of the procedural requirements of Administrative Regulation 150-01 asserted by Mr. Burkhart.

Mr. Burkhart on the claims herein and shall close this case.  Mr. Burkhart's Motion to Supplement **(# 109)** is **GRANTED**.

Dated this 25th day of January, 2013.

**BY THE COURT:**

*[signature: Marcia S. Krieger]*

Marcia S. Krieger
United States District Judge